UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREA JOHNSON,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 17-950 (JEB)

### MEMORANDUM OPINION

Plaintiff Andrea Johnson is a former employee of Defendant Washington Metropolitan Area Transit Authority, which, she charitably alleges, operates the "always dependable transit service in the Washington metropolitan area." Amend. Compl., ¶ 4. Her suit, however, does not depend on the punctuality of Metro; it instead alleges that WMATA unlawfully discriminated against her on the basis of race and sex when it demoted her from a supervisory role in January 2015. Now seeking summary judgment, WMATA contends that no reasonable jury could find that its proffered non-discriminatory reasons for Plaintiff's demotion were pretextual. Agreeing, the Court will grant the Motion.

**I.    Background**

As an initial matter, Defendant points out that Plaintiff has not fully complied with Local Civil Rule 7(h)(1) in her Statement of Disputed Genuine Issues of Material Fact by failing at times to reference the relevant part of the record that supports certain factual assertions, submitting legal conclusions, and not appropriately responding to Defendant's specific assertions. As a result, it asks that its own facts be deemed admitted. See ECF No. 23 (Reply) at

1

2. Although Johnson has been somewhat loose in her Statement, her errors are not so egregious that the entirety of Defendant's Statement of Material Facts should simply be admitted. The Court will not, however, accept facts that do not cite support from the record or conclusions masquerading as facts. With this in mind, the Court sets out the facts in the light most favorable to Johnson.

Plaintiff, who is a black woman, started work at WMATA in October 2008. See Amend. Compl., ¶ 3; ECF No. 16-2 (Def. SMF), ¶ 1. Johnson became a Supervisor of Recruitment Operations in the Department of Human Resources/Talent Acquisition in 2012. See Def. SMF, ¶ 2. In 2014, she made "salary errors in offering and hiring two employees" within WMATA and oversaw three more salary errors for hired employees from WMATA's elevator/escalator apprenticeship program, which together resulted in five employees receiving incorrect salaries. Id., ¶¶ 10-11, 36. Additionally, Johnson's clients — internal WMATA departments such as access services and those responsible for escalator/elevator hiring — complained of her "lack of responsiveness and failures to promptly communicate." Id., ¶¶ 12, 18; ECF No. 20 (Deposition of Ethel Roy) at 20:15-18, 21:3-6. Johnson and her supervisor, Rod Dones, had meetings and exchanged emails about Johnson's job performance in which Dones outlined his concerns regarding these communication issues. See Def. SMF, ¶¶ 13-16, 18; MSJ, Exhs. L, M, N. Johnson was similarly informed of these concerns by the Director of Talent Acquisition, Ethel Roy. Id., ¶ 17. In January 2015, WMATA demoted Johnson from her supervisory role to Senior Sourcing Specialist, citing "very serious concerns in [her] ability as a Supervisor . . . to lead/manage [her] staff and provide quality services to [her] customers." MSJ, Exh. T (Demotion Memorandum) at 4.

Johnson subsequently filed a complaint with the Equal Employment Opportunity Commission and received a right-to-sue notice in February 2017. See Notice (attached to Complaint). She then brought this suit against WMATA on May 19 of that year and filed an Amended Complaint on September 5. See ECF Nos. 1, 8. Johnson's one count alleges that WMATA, in its "discriminatory demotion," engaged in unlawful disparate treatment on the basis of race and sex in violation of Title VII, 42 U.S.C. § 2000e. See Amend. Compl. at 1, ¶¶ 23-27. Defendant now moves for summary judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006). On a

motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant, in other words, is "required to provide evidence that would permit a reasonable jury to find" in her favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

## III. Analysis

WMATA moves for summary judgment on the ground that it demoted Johnson for "nondiscriminatory reason[s]" — namely, for failing to properly communicate with employees and clients and for salary-code errors. See MSJ at 2, 5-6; Def. SMF, ¶¶ 10-18. After articulating this "[l]egitimate, [n]ondiscriminatory [r]eason" for demoting her, Defendant argues that "Plaintiff cannot produce sufficient evidence for a reasonable jury to find that WMATA's asserted nondiscriminatory reason for Plaintiff's demotion was not the actual reason," and that the real reason was sex or race discrimination. See MSJ at 5, 9. Johnson counters that there is still a jury question as to whether WMATA's stated reasons for her demotion are pretext for discrimination, alleging that Defendant deviated from its internal policies and treated similarly situated employees of different classes more favorably. See Opp. at 1.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court established the three-part burden-shifting framework that governs claims of

4

employment discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. When a plaintiff "meets this burden, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its action. If the employer succeeds, then the plaintiff must 'be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext' for unlawful discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (quoting McDonnell Douglas, 411 U.S. at 802, 804) (citation omitted).

When, however, "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — and should not — decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis added). The Court's task in such cases is to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Id. If, even crediting the employee's evidence as true, no reasonable jury could find that the employer's legitimate, non-discriminatory reason for the decision was pretextual, the Court must grant the defendant summary judgment. See Gaujacq v. EDF, Inc., 601 F.3d 565, 570 (D.C. Cir. 2010).

Johnson does not dispute that WMATA has offered non-discriminatory reasons for her demotion, nor does she allege that there is any direct evidence of discrimination. Instead, she alleges that pretext may be found in two places: 1) WMATA deviated from its internal

5

guidelines in demoting her; and 2) it treated employees who are not black or female more leniently when they made similar salary errors, which by itself could be sufficient to survive summary judgment. See Opp. at 1, 7-8. The Court evaluates each position in turn.

　　A.　Violation of WMATA Policy

Plaintiff first contends that, in her January 2015 demotion, Defendant violated its internal guidelines by turning "directly to demotion despite WMATA's policy and procedures directing the course of action that should have been under taking [*sic*]." Opp. at 5. Plaintiffs often point to an employer's divergence from prescribed internal procedure to rebut its justification for an adverse employment action and thereby demonstrate pretext. See Brady, 520 F.3d at 495 n.3. Although courts in this Circuit "do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment[,]" sometimes "rebuttal evidence alone will not . . . suffice to permit an inference of discrimination." DeJesus v. WP Co. LLC, 841 F.3d 527, 535 (D.C. Cir. 2016) (internal quotation and citation omitted). As discussed below, Plaintiff has failed to adduce evidence of "a[] [procedural] error too obvious to be unintentional" to rebut WMATA's proffered non-discriminatory justification for her demotion and establish pretext. See Johnson v. Dist. of Columbia, 99 F. Supp. 3d 100, 110 (D.D.C. 2015) (citing Fischbach v. Dist. of Columbia Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

　　　　1.　*Failure to Document and Issue Warnings*

Johnson maintains that her demotion "did not align with [WMATA] policy" because her performance issues were not properly documented, and she was never afforded an opportunity to respond. See Opp. at 6. Specifically, Plaintiff refers to the WMATA policy for oral and written disciplinary warnings as evidence that her supervisors failed to comply with prescribed

6

procedure. Id. Although WMATA points to a number of instances in which Johnson's supervisors informally communicated deficiencies in her performance, see Def. SMF, ¶¶ 13-20, it does not dispute Johnson's contention that she did not receive an oral or written warning, see Opp. at 6, or any other formal disciplinary action prior to her demotion. See Pl. SMF, ¶ 17.

In claiming a violation here, however, Johnson conflates the procedural requirements for a disciplinary warning with those relevant to a demotion. WMATA does have a "very specific policy for documenting employee performance," Opp. at 6, but the disciplinary policy Johnson cites — and its requirements for official recordation and an opportunity to respond —governs only disciplinary <u>warnings</u>. WMATA's relevant guidelines for disciplinary <u>demotions</u>, by contrast, mention no such requirements for "record[ing] . . . infractions in [an] employment file" and "offer[ing] . . . a chance to reply." Id.

More fundamentally, nothing in WMATA's policy barred it from turning "directly to demotion" in response to Plaintiff's deficient performance. Id. at 5. While Johnson may argue that warnings <u>should</u> have been documented and issued before moving "directly to demotion," id., WMATA policy explicitly states that demotions can be imposed <u>without</u> a prior record of disciplinary warnings. See ECF No. 19-2 (WMATA Disciplinary Actions) at 2 (establishing that although the "severity of the discipline imposed . . . shall have a correlation to the gravity of the violation(s)[,] . . . each instance . . . will be evaluated on a case by case basis"); id. at 3 ("[I]t is possible to take a demotion action with or without a prior record of warnings."). Although oral warnings are "[g]enerally . . . [the] initial disciplinary action taken" and written warnings "[n]ormally" precede disciplinary demotions, the "total circumstances" enable an immediate supervisor to "take a demotion action with or without a prior record of warnings." Id. at 2-3. As Johnson does not contend that WMATA failed to follow the other procedural requirements of a

7

disciplinary demotion — including securing the approval of relevant WMATA authorities, id. at 3 — any lack of formal disciplinary warnings does not constitute a policy violation.

### 2. *Performance Improvement Plan*

Plaintiff next asserts that WMATA departed from ordinary policy by not placing her on a "Performance Improvement Plan." Opp. at 1-2. Such a position finds no footing in WMATA's relevant guidelines either.

While Defendant's annual performance reviews require that a "performance plan" or "Corrective Action Plan" be developed in response to an unsatisfactory evaluation, see MSJ, Exh. I (Performance Review 2014) at 21; Exh. L (Performance Review 2013) at 17; Exh. Q (Performance Review 2010-11) at 13, its disciplinary policy makes no reference to any such performance plan with regard to demotions. Aside from generally outlining that its disciplinary guidelines, "when appropriate," serve to "provide [an employee] with an opportunity to improve [her] less than fully satisfactory job performance," WMATA Disc. Actions at 1, Defendant's internal policy requires neither the offer nor the completion of a "Performance Improvement Plan" as a precondition to demotion.

Last, Plaintiff makes additional reference to a "disputed memorandum," Opp. at 7, which her Statement of Disputed Facts, see ¶¶ 5, 7, and her affidavit clarify refers to her allegation that she received only the first page of her disciplinary memo at the time of demotion. See ECF No. 18-4 (Affidavit of Andrea Johnson), ¶ 7. Even assuming the failure to provide her the full memo constitutes a violation of internal policy, such a trivial irregularity does not amount to a deviation "too obvious to be unintentional," and, more broadly, an employer's "failure to follow its own regulation and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual." Fischbach, 86 F.3d at 1183.

This is particularly so where, as discussed below in Section III.B, there is no evidence that race or sex was the reason for the demotion.

      B.   Similarly Situated Employees

Johnson additionally argues that both pretext and discriminatory motive may be inferred from WMATA's disparate treatment of her as compared to similarly situated employees outside of her class. Evidence of better treatment of comparators may indeed show that an employer's alleged non-discriminatory reasons for the adverse action are merely pretextual cover for underlying discrimination. See Brady, 520 F.3d at 495; Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d 137, 145 (D.C. Cir. 2008); Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015).

Here, Plaintiff specifically alleges that men and/or Asian women were treated better than she despite committing the same errors. See Amend. Compl., ¶¶ 15-16. Although the Complaint generally mentioned these categories of relevant employees outside of her protected class and attached an unsworn letter to that effect, see ECF No. 7-2 (Blessings Chinogwenya Letter), Johnson at summary judgment only offered details as to two WMATA employees, Preeti Bone and James Moore. See MSJ, Exh. CC (Plaintiff's Answers to Interrogatories) at 5-6; Pl. SMF, ¶ 18.

Plaintiff's evidence, however, discloses only that Bone is female and that Moore is male. See MSJ, Exh. DD (WMATA's Answers to Interrogatories) at 7-9. Their races have not been given by Plaintiff (or Defendant), and the Court could thus ignore Bone as a comparator because there is no evidence that she falls outside of Plaintiff's protected class. Similarly, if Moore is black, Johnson would be left only with a sex-discrimination claim. To give Plaintiff the benefit

9

of the doubt, nevertheless, the Court will assume Bone and Moore are both outside of her protected class and proceed to analyze whether they were similarly situated to her.

To show that employees are "similarly situated," a plaintiff is "required to demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to those of the [similarly situated employee]." Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (citation omitted). The relevant aspects to consider include "the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." Burley, 801 F.3d at 301; see also Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012) (holding that plaintiffs must show that similarly situated employees "(1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct'") (citation omitted).

Johnson points out the danger of a cabined approach to this standard because "[t]he purpose of anti-discrimination law is 'not served by an overly narrow application of the similarly situated standard.'" Opp. at 8 (citing Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 396 (6th Cir. 2008)). This Court, however, is bound by the D.C. Circuit precedent in Burley, rather than the Sixth Circuit standard Plaintiff cites. In any event, the factors in Burley are nearly identical to those in Jackson: similarly situated employees must have "the same supervisor, have been subject to the same standards and have engaged in the same conduct." Jackson, 518 F.3d at 393 (citation omitted).

1. *Same Supervisor*

Aside from an unsworn letter that cannot be considered as evidence to overcome a motion for summary judgment, see Chinogwenya Letter, Johnson has provided no evidence that

10

Bone and Moore worked directly under the same supervisor that Johnson did. At most, Plaintiff has implied that Bone and Moore also worked in HR/Talent Acquisition. See WMATA Ans. to Inter. at 7-9. This factor thus tips slightly in Defendant's favor.

    2. *Similar Jobs and Duties*

Plaintiff next claims that she held similar jobs with like duties as Bone and Moore. See Opp. at 5. While all three worked in HR to hire and recruit candidates, see WMATA Ans. to Inter. at 7-9, Johnson has not offered evidence to show that either of the others held a similar supervisory position akin to the one she had while employed at WMATA.

If there is "undisputed evidence of their distinct roles," then the plaintiff and her comparator(s) are not similarly situated. Burley, 801 F.3d at 301. Here, while Bone and Moore held some "official talent acquisition responsibilities" alongside Plaintiff, see WMATA Ans. to Inter. at 8-9, other duties, such as management of and correspondence with internal WMATA clients, were within the purview of supervisors like Plaintiff and were directly related to the errors she committed. See Perf. Rev. 2010-11 at 13. In fact, the interrogatory answers that Plaintiff herself cites, see Pl. SMF, ¶ 18, state that clients "looked to engage" Bone and Moore "in broader HR matters beyond [their] official talent acquisition responsibilities," indicating that their interaction with clients was intended to be more limited than Plaintiff's more involved relationships. See WMATA Ans. to Inter. at 8-9; Perf. Rev. 2010-11 at 13.

In addition, undisputed evidence confirms that, at the relevant time, Bone and Moore were working in temporary roles at WMATA, while Plaintiff worked as a permanent employee there. See WMATA Ans. to Inter. at 8-9 (Bone and Moore were "hired as limited duration and/or temp . . . [until] September 28, 2014, [when they] became [] regular employee[s]"). Previous courts have found that probationary plaintiff-employees are not similarly situated to

permanent employees, although the situation here is reversed. See McKenna v. Weinberger, 729 F.2d 783, 789 (D.C. Cir. 1984) (holding that probationary employee was not similarly situated to "permanent employees of the agency"); Rhodes v. Chertoff, 2005 WL 3273566, at *6 (D.D.C. Aug. 4, 2005) (same). In sum, Plaintiff fails to raise a genuine issue of material fact regarding whether she, Bone, and Moore shared the same supervisory job or duties at WMATA, which precludes a finding of "similarly situated." Barbour v. Browner, 181 F.3d 1342, 1345 (D.C. Cir. 1999) (holding that one employee's "duties were both more numerous and more weighty," foreclosing a finding of similarly situated); see also Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1555 (D.C. Cir. 1997) (holding that partners were not similarly situated to associates).

### 3. *Similar Offenses*

The "mere fact" that two employees had different duties, however, "does not necessarily undermine the probative value of their different treatment," Burley, 801 F.3d at 302, so long as "employees with different responsibilities and titles nonetheless engaged in similar conduct." Id. Plaintiff accordingly alleges that Bone and Moore also had performance issues, rendering them fair comparators. See Pl. SMF, ¶ 18. More specifically, Johnson attached the Chinogwenya Letter to the Complaint, which alleges that Bone, Moore, and Johnson all committed similar salary errors. See also Pl. SMF, ¶ 3 (arguing that the "[salary] error was done by computer and not as input from Ms. Johnson" in June 2014 but not disputing that Johnson made a separate salary error for the MTPD that same year); Perf. Rev. 2014 at 7 ("[Johnson]'s third client in MTPD has expressed disappointment on the salary error she made on two of their employees."); Pl. SMF, ¶ 18 (claiming that Bone and Moore had "performance issues" while working at WMATA, but not offering specific details).

12

Even if all of this evidence was admissible, it still would not raise a genuine issue of material fact regarding comparators. Although Plaintiff states that Bone and Moore had "performance issues" in addition to salary errors, the interrogatory she cites gives no detail as to what those issues were. See WMATA Ans. to Inter. at 7-9. In opposing summary judgment, Johnson "may not simply rest . . . on 'vague or conclusory' evidence." Cureton v. Duke, 272 F. Supp. 3d 56, 62 (D.D.C. 2017) (quoting Johnson v. Perez, 823 F.3d 701, 710 (D.C. Cir. 2016)); see also Evans v. Dist. of Columbia, 219 F. Supp. 3d 99, 110 (D.D.C. 2016) ("Defendant's terse interrogatory responses, without more, do not allow for the kind of meaningful comparison that would enable a factfinder to conclude that Plaintiff and [the comparator] identified in Defendant's interrogatory were similarly situated."). Defendant, by contrast, offers uncontested evidence of Plaintiff's additional issues with clients supported by performance reviews, affidavits, and depositions. See Perf. Rev. 2010-11 at 6 ("[Johnson's] [i]ssues included client complaints of confusion[,] . . . poor execution or understanding of what was expected[,] . . . and/or non-responsiveness to escalated issues."); Roy Depo. at 19:11-20:3 ("So [Plaintiff's supervisors] had to shift accounts and responsibilities because clients were deciding not to want to work with her."); see also MSJ, Exh. P (Deposition of Andrea Johnson) at 36:1-4 ("Then . . . Rod Dones[] shared that Linda Stoffregen [a client] didn't want to work with [Plaintiff] anymore."). Defendant explains that these issues, together with Johnson's salary errors, led to her demotion. See WMATA Ans. to Inter. at 2-3.

No reasonable jury could find Bone and Moore's alleged mistakes to be of comparable seriousness to Johnson's, given her failure to substantiate her allegations of their similar errors with more than non-descript statements or inadmissible evidence, and her additional problems with client management. Plaintiff has thus not illustrated that her conduct is similar to Bone and

Moore's.  See Evans v. Holder, 618 F. Supp. 2d 1, 11-13 (D.D.C. 2009) (holding two employees were not similarly situated, even though "they held the same positions[,] . . . performed the 'same duties and had the same responsibilities,' . . . [and the same supervisor] supervised both of them" because plaintiff made further errors and failed to present evidence of comparator making such errors) (citation omitted); see also Evans, 219 F. Supp. 3d at 111 ("Neither [comparator's] actions nor discipline is established through admissible evidence so as to permit a meaningful comparison.") (citing Bush v. Dist. of Columbia, 595 F.3d 384, 386 (D.C. Cir. 2010)).

In sum, Johnson's role as a supervisor involved more responsibilities than Bone and Moore's, and the legitimate, non-discriminatory reasons given for demoting her — namely, failing to communicate properly with clients and making salary errors — encompass more than the errors that Bone and Moore may have committed.  See Def. SMF, ¶¶ 10-18.  As Plaintiff has failed to establish that she was similarly situated to her alleged comparators, she has not produced sufficient evidence for a jury to find pretext or discrimination on grounds of disparate treatment.

## IV. Conclusion

Lacking evidence that WMATA violated its internal policy or treated similarly situated employees differently, the Court is left without any indication that its adverse employment action was pretextual.  It will, accordingly, grant Defendant's Motion for Summary Judgment.  A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 11, 2018~~July 10, 2018~~